**IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN HEBERLE, individually and** | ) | |
| **On behalf of others similar situated,** | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 18-cv-02288** |
| | ) | |
| **-v-** | ) | |
| | ) | |
| **JULIAN SPENCE a/k/a** | ) | |
| **JUVANE BRYAN SPENCE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

NOW COMES Kevin Heberle ("Plaintiff or "Heberle"), on behalf of himself and all others similarly situated brings this class action against Defendant Julian Spence a/k/a Juvane Bryan Spence ("Spence or the "Defendant"), and alleges the following:

## INTRODUCTION

1.  Despite public perception, leading cryptocurrencies such as Bitcoin, Ethereum and Ripple only tell part of the story. The market for "Initial Coin Offerings" – a transaction akin to an Initial Public Offering in which a new cryptocurrency is created and sold to fund the issuing entity, has exceeded well over $3 billion in the last year alone. While these largely unregulated financing transactions have helped accelerate the development of blockchain technology-based projects, the access to capital has invited in the odd unscrupulous operator. The allegations made herein detail an illusory and ostensibly fake "ICO" that was created by Defendant as a mere artifice to convert and steal Plaintiffs' cryptocurrency.

2.  Defendant, at all times relevant to the Class Period, held himself out to be an expert in cryptocurrency and in particular, initial coin offerings. Plaintiffs first came to know Spence during

1

the Class Period when he sought to promote his alleged new cryptocurrency – "Dark Ripple." Playing off the successful cryptocurrency known simply as "Ripple," Spence claimed to the be developer of Dark Ripple or "DRIP" and fashioned DRIP to be better, more transparent, alternative to the mainstream cryptocurrency Ripple.

3.   Using common means of cryptocurrency promotion, such as social media, online chat platforms such as Telegram and popular forums such as Bitcointalk.org, Spence set about a scheme to defraud Plaintiffs through the sale of DRIP tokens. This included using the Ripple logo as to indicate a formal relationship with the cryptocurrency. It was through those mediums, that Spence solicited for sale, and ultimately sold the illusory and economically worthless DRIP digital currency.

4.   Plaintiff and others followed Spence and his pattern of online promotion, believing that DRIP was indeed a more technologically viable and valuable form of Ripple. This, of course, was utter falsehood and fraudulent basis that Spence spun to create an artifice and vehicle to defraud Plaintiffs. Over the course of two (2) months, believing that DRIP was positioned to become a leading cryptocurrency, the Plaintiffs purchased 763,874 DRIP tokens from Spence for the aggregate price of 46 Ethereum token (a leading cryptocurrency) for an as-converted dollar value of $22,293.90 as of the date of this Complaint. Only a mere few days following the last payment for DRIP was received, Spence disappeared and with it took great lengths to scrub the internet or any claims or evidence of existence of DRIP or the sale of DRIP tokens.

## JURISDICTION & VENUE

5.   The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act (15 U.S.C. §§78j and 78t(a)) and Rule 10b-5 (17 C.F.R. §240.10b-5) promulgated thereunder by the SEC. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

§1331 and $27 of the 1934 Act (15 U.S.C. §78aa). Moreover, subject matter jurisdiction of this Court also arises under 28 U.S.C. § 1332 as the parties hereto are citizens of different states and the amount in controversy exceeds $75,000/00. This Court has supplementary jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

6.   Venue is proper in this District pursuant to §27 of the 1934 Act of 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District, Defendant resides in this District, and certain of the acts and conduct complained of herein, including dissemination of materially false and misleading information to the investing public, occurred in this District.

7.   In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate electronic communications and interstate telephonic communications.

## PARTIES

8.   Plaintiff Kevin Heberle is a resident of the State of California and is one of investors in the DRIP initial coin offering.

9.   Plaintiff avers that there are individuals, both known and unknown to him, that share a commonality of the allegations made herein.

10.  Defendant Julian Spence is a resident of Cook County, Illinois and the lone architect and promoter of the DRIP initial coin offering.

## RELEVANT FACTS

11.  Beginning on or about October 27, 2017, Spence initiated his efforts to sell the DRIP initial coin offering through social media and online forums. This included creating a presence on the popular forum Bitcointalk.org under the username "DarkRipple." **See Exhibit A.** Spence would

further create a forum on the popular "Telegram" social media platform located that would serve

as the main method of communication concerning DRIP. On the Telegram channel, Spence would

post promises concerning the value and utility of the DRIP token that were simply false, including:

> *"Development: First and foremost, we are dedicated to giving our community the most liquidity possible; and to do so we have to get DRIP in the hands of more people. But we are also working on our Alpha version of our exclusive DRIP mobile wallet for android and IOS. Our exclusive $DRIP mobile wallets, will allow for storage, sending and receiving our token. It will also play as a hub for our merchants, partners, and consumers whose selling goods/services. This will allow us to showcase our commerce platform built directly on top of our technology, and our micro economy ecosystem." https://web.telegram.org/#/im?p=@darkripple*

12. Spence created and publicly disseminated marketing materials extolling the economic

value of DRIP and apparent superiority to Ripple. **See Exhibit B.** These materials were widely

promoted and provided to Plaintiff in an effort solicit his interest in purchasing DRIP token. While

Spence continually touted the benefits of DRIP, he actively concealed the true nature, functionality

and value of the token. While viable blockchain-based companies seeking to develop tokens with

the alleged functionality of DRIP often spend well in excess of $500,000 in development costs,

Spence used an online service to effectively clone the opensource Ethereum cryptocurrency for

the cost of only $50.

13. For his part, Spence held himself out to be a successful venture capitalist and blockchain

technology entrepreneur. Spence further claimed that he was a successful cryptocurrency trader,

often posting fake images of substantial trading accounts to social media in an attempt to garner

further confidence from his prospective victims. Despite his claims, Spence hasn't any accrued

any notable experience or success in the venture capital, blockchain or cryptocurrency trading

arenas.

14. Beginning on November 2, 2017, Spence organized a DRIP "Pre-Sale" event in which he

sought to solicit investors at a discounted price from the anticipated initial coin offering. In

connection with the Pre-Sale, he noted that his objective was to "make investors rich," when

nothing could have been further the truth. The price at which Spence offered the DRIP token in the Pre-Sale was $0.02 per token.

15. To orchestrate his scheme, Spence continued to promote the illusory utility of the DRIP token, including the ability to be used to purchase goods and services. **See Exhibit C.** He would even go as far as to promise a five (5%) percent dividend for those early investors. **See Exhibit B.** Finally, on a post on the DRIP Telegram channel, he would state that "[I] am dedicated to giving our community the most liquidity possible.." – suggesting that the interest in DRIP would be such that there would be a certain liquidity inherent in the token.

16. These representations were entirely false and Spence was aware of the falsity of such representations at the time he made them. Ultimately, however, the representations were effective to carry out his scheme. By November 27, 2017, the end of the Pre-Sale, Spence has sold 763,874 DRIP tokens for a total 46 Ethereum tokens (the price of one Ethereum token as of the date of this Complaint being $563.35). For his part, Plaintiff purchased approximately $4,000 worth of DRIP token. **See Exhibit D**

17. Following the completion of the Pre-Sale, Spence indicated to Plaintiff that he intended to continue working to promote the DRIP token. The lone step that he would take, however, was to initiate an "Airdrop" of DRIP token. **See Exhibit B.** In the cryptocurrency industry, an Airdrop is an event where tokens are effectively given out for free or as consideration for some micro-task such as social media posts.

18. In that Plaintiff and others had just paid for the DRIP token, he naturally became upset that Spence had resorted to effectively giving the token away for free. His effort to create more widespread adoption, of course, failed like everything else. The DRIP token was never able to obtain the trading volume that Spence has repeatedly promised before and during the Pre-Sale.

19. Throughout December, 2017, Spence became increasingly unresponsive to Plaintiff and other's inquiries, including having abandoned the Telegram channel altogether. By January 3, 2018, Spence had effectively scrubbed the internet of any mention of DRIP, including having deleted its website, Twitter, and deleted its Telegram channel. Spence would then embark upon a plan to conceal and convert the investor's Ethereum, including transferring the 46 Ethereum to a personal wallet and exchange of the Ethereum with various other cryptocurrencies to effectively "launder" the proceeds of the DRIP sale. **See Exhibit E.**

## CLASS ALLEGATIONS

20. Class Definition: Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2) and (b)(3)on behalf of himself and a Class of similarly situated individuals and businesses, defined as follows:

*All purchasers of the DRIP token from Defendant Julian Spence*

Excluded from the Class is: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

21. Plaintiff reserves the right to redefine the Class prior to certification.

22. Class Size (Fed. R. Civ. P. 23(a)(1)): Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Classes is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

6

23. <u>Commonality (Fed. R. Civ. P. 23 (a) (2))</u>: Common questions of law and fact apply to the claims of all class members. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following: (a) whether Defendant violated the Exchange Act in connect with the solicitation, offer and sale of DRIP; (b) whether Defendant fraudulently induced the sale of DRIP; (c) whether Defendant breached its contractual obligations to the purchasers of DRIP; and (d) whether Plaintiff and those similarly situated incurred damages as a direct and proximate result of their purchase of DRIP.

24. <u>Typicality (Fed. R. Civ. P. 23 (a) (3))</u>: The Plaintiff's claims are typical of the claims of all class members. The Plaintiff purchased and received the same security – the DRIP tokens from Defendant Spence. The Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. The Defendant has acted in the same or in a similar manner with respect to the Plaintiff and all the class members by using fraudulent means to sell the DRIP tokens.

25. <u>Common Conduct (Fed. R. Civ. P. 23 (b) (2))</u>: Class certification is also appropriate because the Defendant has acted in the same or similar manner with respect to all class members thereby making injunctive and declaratory relief appropriate.

26. <u>Predominance and Superiority (Fed. R. Civ. P. 23 (b) (3))</u>: Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

      a. Proof of the claims of the Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

b. Evidence regarding defenses or any exceptions to liability that the Defendant may assert and attempt to prove will come from the Defendant's records and will not require individualized or separate inquiries or proceedings;

c. The Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

d. The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

e. This cause is management as a class action in that:

    i. The blockchain records clearly indicate the persons who purchased the DRIP token and the consideration paid therefor;

    ii. Liability and damages can be established for the Plaintiff and the class with the same common proofs;

    iii. Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

    iv. A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

    v. A class action will contribute to uniformity of decisions concerning the Defendant's practices;

    vi. As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

## COUNT I – VIOLATION OF THE EXCHANGE ACT

27. Plaintiffs incorporates the preceding paragraphs as if full restated herein.

28. The DRIP tokens each represent a "security" as defined in Section 10(b) of the 1934 Act and Securities and Exchange Commission Rule 10b-1 promulgated thereunder.

29. Spence employed fraudulent misrepresentations, artifices of fraud and material omissions as a means to solicit the sale of the DRIP tokens to Plaintiff and others similarly situated as follows:

    a. Spence represented that DRIP was technologically superior and had greater utility than the cryptocurrency in fact had, and further claimed an alleged superiority to the common RIPPLE cryptocurrency;

    b. Spence represented that he was a successful venture capitalist, blockchain entrepreneur and cryptocurrency trader, and was committed to furthering the DRIP token and its consumer adoption;

    c. Spence promised the payment of a dividend on the ownership of the DRIP token but never offered investors any such return; and

    d. Spence concealed and converted for his own account and benefit the entirety of the proceeds of the sale of the DRIP token.

30. Spence knew that his multitude of representations concerning the economic value and its utility as a currency were false at the time he made them.

31. By virtue of Spence's fraudulent misrepresentations, artifices of fraud and material omissions, it has violated Section 10(b) of the 1934 Act and Rule 10b-5 in that it (a) employed devices schemes and artifices to defraud; (b) made untrue statements of material facts and omitted adverse material facts to make the statements made not misleading, and (c) engaged in acts,

practices and a course of business that operated as a fraud and deceit on Plaintiff and other's similarly situated.

32. In furtherance of his scheme to defraud, Spence directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate electronic communications and interstate telephonic communications.

33. Spence acted with scienter in that he knew the fraudulent misrepresentations, artifices of fraud and material omissions were made solely to induce Plaintiff and others similarly situated to purchase the DRIP tokens.

34. As a direct and proximate result of the conduct described herein, Plaintiff and others similarly situated has incurred damages as Spence has converted his Ethereum token.

35. The conduct of Spence described herein was malicious and made with the intent to inflict financial damages upon Plaintiff, and by reason thereof, punitive and exemplary damages should be assessed against him.

36. WHEREFORE, Plaintiff prays for the relief set forth below.

## COUNT II – COMMON LAW FRAUD

37. Plaintiffs incorporates the preceding paragraphs as if full restated herein.

38. Spence employed fraudulent misrepresentations, artifices of fraud and material omissions as a means to solicit the sale of the DRIP tokens to Plaintiff and others similarly situated as follows:

    a. Spence represented that DRIP was technologically superior and had greater utility than the cryptocurrency in fact had, and further claimed an alleged superiority to the common RIPPLE cryptocurrency;

b.  Spence represented that he was a successful venture capitalist, blockchain entrepreneur and cryptocurrency trader, and was committed to furthering the DRIP token and its consumer adoption;

c.  Spence promised the payment of a dividend on the ownership of the DRIP token but never offered investors any such return; and

d.  Spence concealed and converted for his own account and benefit the entirety of the proceeds of the sale of the DRIP token.

39. Spence knew that his multitude of representations concerning the economic value and its utility as a currency were false at the time he made them.

40. Spence acted with scienter in that he knew the fraudulent misrepresentations, artifices of fraud and material omissions were made solely to induce Plaintiff and others similarly situated to purchase the DRIP tokens.

41. As a direct and proximate result of the conduct described herein, Plaintiff and others similarly situated has incurred damages as Spence has converted his Ethereum token.

42. The conduct of Spence described herein was malicious and made with the intent to inflict financial damages upon Plaintiff, and by reason thereof, punitive and exemplary damages should be assessed against him.

43. WHEREFORE, Plaintiff prays for the relief set forth below.

## COUNT III – BREACH OF CONTRACT

44. Plaintiffs incorporates the preceding paragraphs as if full restated herein.

45. Beginning on November 2, 2017 and continuing through November 27, 2017, Plaintiff and others similarly situated entered into an agreement with Spence for purposes of purchasing 763,874 DRIP token in exchange for 46 Ethereum token.

46. Spence employed fraudulent misrepresentations, artifices of fraud and material omissions as a means to coerced and induce Plaintiff and others similarly situated to contract with Spence, including:

    a.  Spence represented that DRIP was technologically superior and had greater utility than the cryptocurrency in fact had, and further claimed an alleged superiority to the common RIPPLE cryptocurrency;

    b.  Spence represented that he was a successful venture capitalist, blockchain entrepreneur and cryptocurrency trader, and was committed to furthering the DRIP token and its consumer adoption;

    c.  Spence promised the payment of a dividend on the ownership of the DRIP token but never offered investors any such return; and

    d.  Spence concealed and converted for his own account and benefit the entirety of the proceeds of the sale of the DRIP token.

47. The aforementioned misrepresentations were of such a nature and gravity that as a direct and proximate result, Plaintiff and others similarly situated failed to obtain their contractual benefit of their bargain.

48. For such reason, Spence has breached the verbal contracts made with Plaintiff and others similarly situated

49. Plaintiff and others similarly situated from incurred damages as a direct and proximate result of Spence's breach of contract.

50. The conduct of Spence described herein was malicious and made with the intent to inflict financial damages upon Plaintiff, and by reason thereof, punitive and exemplary damages should be assessed against him.

51. WHEREFORE, Plaintiff prays for the relief set forth below.

## COUNT IV – RESCISSION OF CONTRACT

52. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

53. Beginning on November 2, 2017 and continuing through November 27, 2017, Plaintiff and others similarly situated entered into an agreement with Spence for purposes of purchasing 763,874 DRIP token in exchange for 46 Ethereum token.

54. Spence owed a fiduciary duty to Plaintiff and others similarly situated by virtue of the solicitation, offer and sale of DRIP token – e.g., a security

55. Spence employed fraudulent misrepresentations, artifices of fraud and material omissions as a means to coerced and induce Plaintiff and others similarly situated to contract with Spence, including:

    a.  Spence represented that DRIP was technologically superior and had greater utility than the cryptocurrency in fact had, and further claimed an alleged superiority to the common RIPPLE cryptocurrency;

    b.  Spence represented that he was a successful venture capitalist, blockchain entrepreneur and cryptocurrency trader, and was committed to furthering the DRIP token and its consumer adoption;

    c.  Spence promised the payment of a dividend on the ownership of the DRIP token but never offered investors any such return; and

    d.  Spence concealed and converted for his own account and benefit the entirety of the proceeds of the sale of the DRIP token.

56. The aforementioned misrepresentations were of such a nature and gravity that as a direct and proximate result, Plaintiff and others similarly situated failed to obtain their contractual benefit of their bargain.

57. For such reason, Spence has breached the verbal contracts made with Plaintiff and others similarly situated

58. Plaintiff and others similarly situated can be returned to the *status quo ante* by the return of the 46 Ethereum token used to purchase the DRIP token.

59. Plaintiff and others similarly situated have no adequate remedy at law.

60. WHEREFORE, Plaintiff prays for the relief set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint the Plaintiff as the representative of the class, and appoint the Plaintiff's counsel as counsel for the class;

B. That the Court award actual monetary loss from such violations, and that the Court award treble damages if the violations are deemed "willful and knowing";

C. That the transactions for the purchase of the DRIP tokens be rescinded (in the alternative)

D. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

Dated: March 27, 2018                    Respectfully submitted,

                                         KEVIN HEBERLE

                                         /s/ Adam S. Tracy
                                         _____
                                         One of His Attorneys

14

Adam S. Tracy
(ARDC #6287552)
The Tracy Firm, Ltd.
141 W. Jackson Blvd.
Suite 2172
Chicago, IL 60604
312.754.9499 Ofc.
630.689.9471 Fax
at@tracyfirm.com